**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOHN BERKO, | : | CIVIL ACTION NO. 06-4366 (MLC) |
|  | : |  |
| Plaintiff, | : | **MEMORANDUM OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| BOROUGH OF SPRING LAKE, | : |  |
| et al., | : |  |
|  | : |  |
| Defendants. | : |  |

**COOPER, District Judge**

Plaintiff, John Berko, alleges claims under 42 U.S.C. § ("Section") 1983 and state law against defendant David Laskey, a/k/a David Lasky ("Lasky"). (Dkt. entry no. 1, Rmv. Not., Ex. A, Compl.)  Lasky is the only remaining defendant in this action, and now moves for summary judgment in his favor pursuant to Federal Rule of Civil Procedure ("Rule") 56(c).  (Dkt. entry no. 30).  Plaintiff opposes the motion as to certain Section 1983 claims.  (Dkt. entry no. 36.)  The Court determines this motion on briefs without an oral hearing, pursuant to Rule 78(b).  For the reasons stated herein, the Court will grant in part and deny in part Lasky's motion for summary judgment.[1]

---

[1] The complaint also alleges claims "arising under law and statutes of the State of New Jersey".  (Compl., at 3.)  However, plaintiff does not address these claims in his papers, nor does he oppose Lasky's motion for summary judgment as to these claims.  (See dkt. entry no. 36, Pl. Br., at 30-31 (stating that Lasky is not entitled to summary judgment as to "[p]laintiff's Section 1983 claims for false arrest and/or excessive force").)  Thus,

**BACKGROUND**

**I.   Factual Background**

Lasky was on duty as the Alcoholic Beverage Control Officer for the Spring Lake Heights Police Department at a bar known as the "Champagne Porch" (the "Porch"), located in the Borough of Spring Lake Heights, on the evening of July 16, 2004, and into the early morning hours of July 17, 2004. (Dkt. entry no. 30, Def. Br., at 2.)  Plaintiff entered the Porch sometime after 11:30 P.M. on July 16, 2004 with Theresa Danish ("Danish"). (Id. at 2; dkt. entry no. 36, Pl. Br., at 2-3.)

The parties dispute what happened following plaintiff's entrance into the Porch.  Lasky contends the following set of facts: Plaintiff ignored a request for identification by both an employee of the Porch and Lasky, and walked away from Lasky. (Def. Br., at 3.)  Lasky then advised plaintiff that "he was checking for intoxicated persons", exhibited his badge, and identified himself as a police officer.  (Id.)  Plaintiff then said "'Local cop, I'm a State Trooper, that makes you insignificant, you can go away now,'" and again refused to produce identification.  (Id.)  Lasky then asked plaintiff to go outside the Porch to speak with him.  (Id.)  Plaintiff turned away from Lasky and sat at the bar.  (Id. at 3-4.)  Plaintiff was

the Court will grant Lasky's motion as to any state law claims asserted against him.

then served a drink, even though the bartender was instructed by
Lasky not to serve plaintiff a drink.  (Id. at 4.)  Lasky then
advised plaintiff that he believed plaintiff was intoxicated, and
could be arrested if he consumed the drink.  (Id.)  Plaintiff
then took a sip of his drink.  (Id.)  Lasky again asked plaintiff
to go outside of the Porch.  (Id.)  Plaintiff then "poked [Lasky]
in the chest with his fingers and stated, 'What are you going to
do, tough guy?'".  (Id.)  Lasky then called police headquarters
for assistance.  (Id.)

When defendants Edward Gunnell ("Gunnell"), Matunas, and
Zachary Ramp ("Ramp") arrived at the Porch, Lasky informed them
that plaintiff was to be arrested for assaulting a police officer
and disorderly conduct.  (Id.)  When plaintiff was informed that
he was under arrest, he stated "'This is bulls**t.  I want to
speak to a supervisor.'"  (Id. at 4-5.)  Plaintiff was informed
that Lasky was the supervisor on the scene.  (Id. at 5.)  After
initially refusing to go outside the Porch with Gunnell, Matunas,
and Ramp, plaintiff then complied with their request to go
outside with them.  (Id.)  Lasky remained inside the Porch.
(Id.)

Ramp then handcuffed plaintiff and Matunas placed him in the
rear seat of a police car.  (Id.)  Lasky did not observe
plaintiff being handcuffed or placed in the police car.  (Id. at
6.)  Lasky then approached plaintiff as he sat in the police car

3

and asked him to apologize for his behavior.  (Id.)  Plaintiff
"made an apology which [Lasky, Matunas, and Ramp] all considered
to be insincere", and then was taken to police headquarters.
(Id.)  Gunnell later returned to the Porch, and Lasky advised him
to charge plaintiff with disorderly conduct on a summons
complaint, and release him from custody.  (Id. at 6-7.)
Plaintiff was held in custody for approximately forty-five
minutes, then released with a summons complaint.  (Id. at 7.)[2]

Plaintiff disputes this version of the facts.  (See Pl. Br.,
at 5-12.)  Plaintiff contends the following: Plaintiff had not
consumed any alcohol before arriving at the Porch. (Id. at 9.)
When plaintiff entered the Porch, Lasky asked him to see Danish's
identification.  (Id. at 5.)  Lasky was not in uniform, nor did
he identify himself as a police officer.  (Id.)  Plaintiff
"assumed [Lasky] to have been joking since [Danish] was 50 years
old." (Id. at 6.)  Then, as plaintiff entered into the bar area
and sat down at the bar, Lasky "continued to yell that he wanted
to see [Danish's] identification."  (Id.)

Plaintiff "continued to ignore [Lasky] in an effort to avoid
confrontation." (Id. at 7.)  Plaintiff did not touch Lasky at
any time.  (Id. at 9.)  Further, Lasky did not ask to see
plaintiff's identification at any time.  (Id. at 7.)  Then,

---

[2] According to Lasky, a summons complaint does not require a
Municipal Judge to set bail, unlike a warrant complaint. (Def.
Br., at 7.)

"[w]ithout cause or provocation", Lasky contacted other police
officers and instructed them to arrest plaintiff for aggravated
assault. (Id. at 8.) When the other officers arrived, they
advised plaintiff that he was under arrest and asked him to
accompany them outside. (Id.) Plaintiff immediately complied
with this request. (Id.)

Plaintiff was then handcuffed and placed into the back of
the police car. (Id.) It was at this time that plaintiff
learned Lasky was a police officer. (Id.) Plaintiff then asked
to speak with a supervisor, and was informed Lasky was the
supervisor. (Id.) Lasky then approached plaintiff in the police
car, and "put his head in the window and started yelling at
[p]laintiff, screaming that [p]laintiff had f****d with the wrong
cop. Nobody ignores me - - Nobody.'" (Id. at 9-10.) This
conduct caused plaintiff to "'jerk back'" and "'twist [his]
neck'". (Id. at 10.) Lasky then directed plaintiff to apologize
to him, and plaintiff responded that "if [p]laintiff had done
something wrong that upset [Lasky], then plaintiff would
apologize." (Id. at 10.) "[Lasky] then yelled to the uniformed
officer, 'f**k him, take him to the County, no ten percent.'"
(Id.) Plaintiff was then taken to police headquarters, held in
custody for two hours, and released with a summons complaint.
(Id. at 4, 12.)

It is undisputed that Municipal Court Judge Evan Broadbelt found plaintiff guilty of disorderly conduct, in violation of N.J.S.A. § 2C:33-2, after a trial in the Municipal Court of Spring Lake Heights in August 2006.  (Def. Br., at 7; Pl. Br., at 5.)  Plaintiff appealed his conviction to the Superior Court of New Jersey, Monmouth County.  (Def. Br., at 7; Pl. Br., at 5.) The Honorable Anthony J. Mellaci, Jr., J.S.C., reversed plaintiff's conviction in November 2006.  (Def. Br., at 7; Pl. Br., at 5.)

## II.  **The Present Action**

Plaintiff brought this action in state court in July 2006, alleging various claims under Sections 1983, 1985, and state law against defendants, Borough of Spring Lake Heights, Spring Lake Heights Police Department, Mark A. Steets ("Steets"), David Petriken ("Petriken"), Lasky, Gunnell, Matunas, Ramp, and Mercer Inc.  (Compl.)[3]  Borough of Spring Lake Heights, Spring Lake Heights Police Department, Steets, and Petriken removed the action to this Court in September 2006.  (Rmv. Not.)  In October 2007, plaintiff entered into stipulations of dismissal with (1) Mercer Inc., and (2) Gunnell, Matunas, and Ramp, pursuant to which plaintiff voluntarily dismissed all claims against those defendants with prejudice.  (Dkt. entry nos. 24 & 29.)  Plaintiff

---

[3] The complaint names Borough of Spring Lake as a defendant. However, it appears that the correct name of that defendant is Borough of Spring Lake Heights.  (<u>See</u> Rmv. Not. (listing Borough of Spring Lake Heights as a removing party).)

and Borough of Spring Lake Heights, Spring Lake Heights Police
Department, Steets, and Petriken entered into a stipulation of
dismissal, pursuant to which plaintiff voluntarily dismissed all
claims against those defendants with prejudice, in March 2008.
(Dkt. entry no. 38.)  Thus, Lasky is the only remaining defendant
in this action.

**DISCUSSION**

**I.   Summary Judgment Standard**

Rule 56(c) provides that summary judgment is proper if the
pleadings, the discovery and disclosure materials, and any
affidavits show that there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a matter of
law.  Id.  The summary judgment movant bears the initial burden
of showing that there is no genuine issue of material fact.
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the
movant has met this prima facie burden, the non-movant must set
out specific facts showing that there is a genuine issue for
trial.  Fed.R.Civ.P. 56(e)(2).  A non-movant must present actual
evidence that raises a genuine issue of material fact and may not
rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable
to the non-movant when deciding a summary judgment motion.
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

7

587 (1986).  At the summary judgment stage, the Court's role is
"not . . . to weigh the evidence and determine the truth of the
matter but to determine whether there is a genuine issue for
trial."  Anderson, 477 U.S. at 249.  Under this standard, the
"mere existence of a scintilla of evidence in support of the
[non-movant's] position will be insufficient [to defeat a Rule
56(c) motion]; there must be evidence on which the jury could
reasonably find for the [non-movant]."  Id. at 252.  "By its very
terms, this standard provides that the mere existence of some
alleged factual dispute between the parties will not defeat an
otherwise properly supported motion for summary judgment; the
requirement is that there be no genuine issue of material fact."
Id. at 247-48 (emphasis in original).  A fact is material only if
it might affect the action's outcome under governing law.  Id. at
248.  "[T]here is no issue for trial unless there is sufficient
evidence favoring the nonmoving party for a jury to return a
verdict for that party.  If the evidence is merely colorable, or
is not significantly probative, summary judgment may be granted."
Id. at 249-50 (internal citations omitted).

## II.  Fifth Amendment Claim

The complaint alleges that Lasky violated plaintiff's rights
under the Fifth Amendment.  (Compl., at 6.)  "The limitations of
the [F]ifth [A]mendment restrict only federal governmental
action".  Nguyen v. U.S. Catholic Conf., 719 F.2d 52, 54 (3d Cir.

1983).  Accordingly, the rights provided by the Fifth Amendment
do not apply to the actions of a state or municipal official such
as Lasky.  Leventry v. Watts, No. 06-193, 2007 WL 1469038, at *2
(W.D. Pa. May 17, 2007) ("[T]he Fifth Amendment restricts the
actions of federal officials, not state actors"); Kopchinski v.
Green, No. 05-6695, 2006 WL 2228864, at *1 (E.D. Pa. Aug. 2,
2006) (finding that because defendants were state actors,
plaintiff's Fifth Amendment claims could not survive summary
judgment).  Thus, Lasky is entitled to summary judgment as to
plaintiff's Fifth Amendment claim here.

## III. Section 1983 Claims

A plaintiff asserting civil rights violations under Section
1983 must establish that the defendant acted under color of state
law to deprive him or her of a federal right.  Groman v. Twp. of
Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Section 1983 does
not create substantive rights, but instead provides a remedy for
the violation of rights created by other federal laws.  Id.;
Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  For a
plaintiff's Section 1983 claims to survive a motion for summary
judgment, there must be a genuine issue of material fact as to
whether the defendant (1) acted under color of state law, or (2)
deprived the plaintiff of a federal right.  Groman, 47 F.3d at
633.

"The color of state law element is a threshold issue; there is no liability under [Section] 1983 for those not acting under color of law." Id. at 638.  Further, officials may be liable under Section 1983 for the acts of those over whom they have supervisory responsibility.  However, civil rights liability cannot be predicated solely on the doctrine of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement in the alleged wrong-doing must be shown.  Id.  Once it has been established that the defendant acted under color of state law, the Court must identify the federal right the defendant allegedly violated.  See Groman, 47 F.3d at 633.

### A.   Fourteenth Amendment Claim - Deliberate Indifference To Medical Needs

The complaint alleges that Lasky violated plaintiff's right to "[t]imely and effective assistance that should have been afforded to [p]laintiff; through necessary and appropriate medical aid", and that plaintiff was "confined to the barracks overnight and was denied medical attention despite his repeated request for same."  (Compl., at 5-6.)  Plaintiff does not oppose Lasky's motion for summary judgment as to this claim.  (See Pl. Br.)

A plaintiff bringing a Section 1983 claim must show that a defendant was personally involved in the alleged wrong-doing, as discussed supra.  Rode, 845 F.2d at 1207.  Plaintiff has neither

10

shown nor argued that Lasky was personally involved in the medical treatment, or lack thereof, he received, as plaintiff does not dispute that Lasky did not go to the police station after plaintiff was arrested.  (Def. Br., at 6, 26; Pl. Br, at 4.)  Therefore, Lasky is entitled to summary judgment on plaintiff's Fourteenth Amendment claim of deliberate indifference to his medical needs.  See Rode, 845 F.2d at 1207.[4]

   **B.   Fourth Amendment Claims**

      **1.   Excessive Force**

   Claims of excessive force by a police officer during an arrest are evaluated under the Fourth Amendment's "objective reasonableness" standard.  Brosseau v. Haugen, 543 U.S. 194, 197 (2004); Boardman v. Riverside Twp., No. 04-5779, 2007 WL 2066383,

---

   [4] Plaintiff is not a convicted prisoner; thus, he is not protected from a prison official's deliberate indifference to his medical needs pursuant to the Eighth Amendment.  Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997).  However, "the Due Process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner".  Banda v. Corzine, No. 07-4508, 2007 WL 3243917, at *8 (D.N.J. Nov. 1, 2007) (quotation and citations omitted).  "[T]he Eighth Amendment sets forth the floor for the standard applicable to the claims of . . . pre-trial detainees."  Id.  Therefore, if plaintiff had shown that (1) he had a serious medical need, and (2) Lasky was deliberately indifferent to this need during the time period plaintiff was in custody, he would have had a viable claim that Lasky violated his right not be punished without due process of law.  See id. at *8, *11; see Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (stating Eighth Amendment standard for claim of deliberate indifference to medical needs).

at *2 n.1 (D.N.J. July 13, 2007).[5]  Thus, a plaintiff alleging
excessive force during an arrest must demonstrate that the
defendant officer's seizure of the plaintiff was unreasonable.
Bornstad v. Honey Brook Twp., 211 Fed.Appx. 118, 123 (3d Cir.
2007).  "[R]easonableness is evaluated under a totality of the
circumstances analysis, which asks whether 'the officers' actions
are 'objectively reasonable' in light of the facts and
circumstances confronting them without regard to their underlying
intent or motivations.'"  Id.  In evaluating the reasonableness
of an officer's actions, the Court should consider, inter alia,
(1) the severity of the crime at issue, (2) whether the suspect
posed an immediate threat to others' safety, (3) whether the
suspect attempted to evade arrest, (4) whether the suspect was a
violent or dangerous person, (5) the duration of the police
action at issue, (6) whether the police action at issue occurred
during an arrest, (7) whether there was a possibility that the
suspect was armed, and (8) the number of persons with whom the
officer had to contend with at one time.  Id.

    A police officer's failure to intervene during another
officer's use of excessive force also can constitute excessive

---

[5] Claims of excessive force occurring after an arrest by a
pre-trial detainee, by contrast, are governed by the standards of
the due process clause of the Fourteenth Amendment.  Totten v.
Keller, 205 Fed.Appx. 919, 921 (3d Cir. 2006).  "To prove a due
process violation, the detainee must show that the force used
amounts to a wanton infliction of punishment, as opposed to an
amount 'rationally related' to exercising control."  Id. at 922.

force in violation of the Fourth Amendment.  Yarnall v. Mendez,
509 F.Supp.2d 421, 433 (D. Del. 2007).  To establish such a
violation, a plaintiff must show that the police officer (1)
failed or refused to intervene when a constitutional violation
took place in the officer's presence or with the officer's
knowledge, and (2) had a realistic and reasonable opportunity to
intervene.  Id.  "[I]t is plaintiff's burden to adduce evidence
of both requirements."  Id.

    Plaintiff argues that summary judgment as to his excessive
force claim should be denied because there is a genuine issue of
material fact "as to whether Lasky's conduct was objectively
reasonable and amounted to excessive force during the course of
[p]laintiff's arrest."  (Pl. Br., at 26.)  Plaintiff argues that
Lasky was objectively unreasonable when he yelled at plaintiff
while plaintiff was sitting in the police car, causing plaintiff
to aggravate "a pre-existing spinal condition when [p]laintiff
twisted his neck as he reacted to [Lasky]."  (Id. at 27.)

    Plaintiff concedes that Lasky did not "physically touch"
him, however.  (Id. at 25.)  Nor does plaintiff contend that any
other police officer subjected him to excessive force for which
Lasky could be responsible based on personal involvement.
(See Pl. Br.)  See Yarnall, 509 F.Supp.2d at 433.  Moreover,
allegations of threats and verbal harassment cannot establish a
Section 1983 claim.  Banda, 2007 WL 3243917, at *10 (noting that

13

verbal harassment, taunts, threats, or use of profanity alone is
not actionable under Section 1983); <u>Bieros v. Nicola</u>, 860 F.Supp.
226, 233 (E.D. Pa. 1994) (noting that "[m]ere verbal harassment .
. . does not rise to the level of a constitutional deprivation so
as to qualify for a claim under [S]ection 1983, unless
fulfillment of that threat was conditioned on plaintiff
exercising some constitutionally protected right").  Therefore,
the Court holds that Lasky is entitled to summary judgment as to
this claim.

2.   **False Arrest and False Imprisonment**[6]

The Fourth Amendment prohibits a police officer from arresting and incarcerating a person without probable cause. U.S. Const., amend. IV; Herbert v. Lech, No. 03-3852, 2006 WL 278907, at *3 (D.N.J. Feb. 2, 2006).  Moreover "where the police lack probable cause to make an arrest, the arrestee has a claim

---

[6] Although Lasky does not raise this argument in his papers, it appears that plaintiff's false arrest and false imprisonment claims are not time-barred.  The relevant statute of limitations for plaintiff's Section 1983 claims is two years.  See N.J.S.A. § 2A:14-2 (establishing two-year statute of limitations for personal injury actions); Richards v. County of Morris, No. 07-1995, 2007 U.S. Dist. LEXIS 49290, at *10-*11 (D.N.J. July 5, 2007) (noting that Section 1983 claims are best characterized as personal injury actions, and thus are governed by the relevant state's statute of limitations for personal injury tort actions). The statute of limitations for plaintiff's false arrest and false imprisonment claims began to run once he became detained pursuant to legal process.  Wallace v. Kato, 127 S.Ct. 1091, 1100 (2007). Thus, plaintiff's false arrest and false imprisonment claims are not time-barred, as (1) the statute of limitations for these claims apparently began to run on July 17, 2004, after plaintiff was arrested and issued a summons complaint, and (2) plaintiff filed the complaint on July 17, 2006, the last day of the two-year period plaintiff had to file the claims.  (See Compl.; Def. Br., at 2-7 (describing events surrounding plaintiff's arrest and subsequent issuance of summons complaint in early morning hours of July 17, 2004); Pl. Br., at 1-12 (same).)  N.J. Mfrs. Ins. Co. v. Kopecky, No. A-3792-06T5, 2007 WL 4060128, at *1, *4 (N.J. App. Div. Nov. 19, 2007) (holding that statute of limitations tolled when plaintiff filed complaint on date statute of limitations expired).  The Court need not address whether plaintiff's other claims are time-barred, as Lasky's motion will be granted as to these claims, as discussed supra.

15

under [Section] 1983 for false imprisonment based on a detention pursuant to that arrest." Groman, 47 F.3d at 636.

Probable cause exists when the facts and circumstances are "sufficient to warrant a prudent [person] in believing that the [arrestee] had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quotation and citations omitted); Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997). "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Thus, a defense to both an unlawful arrest and false imprisonment claim is that the defendant police officers acted with probable cause. Groman, 47 F.3d at 636 (noting that "an arrest based on probable cause could not become the source of a [Section 1983] claim for false imprisonment"); Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988) (noting that existence of probable cause is threshold issue for false arrest claim).

Lasky is not entitled to summary judgment as to the issue of probable cause, as there are disputed issues of material fact as to whether the circumstances surrounding plaintiff's arrest were sufficient to warrant a prudent person to believe that plaintiff had committed or was committing an offense. Plaintiff was

arrested and charged with disorderly conduct in violation of

N.J.S.A. § 2C:33-2.   (Def. Br., at 7.)   That statute provides:

> a. Improper behavior. A person is guilty of a petty
> disorderly persons offense, if with purpose to cause
> public inconvenience, annoyance or alarm, or recklessly
> creating a risk thereof he
>
> (1) Engages in fighting or threatening, or in violent or
> tumultuous behavior; or
>
> (2) Creates a hazardous or physically dangerous
> condition by any act which serves no legitimate purpose
> of the actor.
>
> b. Offensive language. A person is guilty of a petty
> disorderly persons offense if, in a public place, and
> with purpose to offend the sensibilities of a hearer or
> in reckless disregard of the probability of so doing, he
> addresses unreasonably loud and offensively coarse or
> abusive language, given the circumstances of the person
> present and the setting of the utterance, to any person
> present.

N.J.S.A. § 2C:33-2.   Whether plaintiff acted in such a manner as

described in this statute depends on plaintiff's conduct during

the incident at issue, a subject of factual dispute between the

parties, as described <u>supra</u>.   For example, Lasky argues that he

is entitled to summary judgment as to this issue because Lasky

> believed [p]laintiff to be intoxicated . . . [d]espite
> being instructed not to consume alcohol, [p]laintiff
> ignored [Lasky] . . . turned his back to [Lasky] and
> took a drink . . . [p]laintiff's purposeful
> unresponsiveness, including his refusal to produce
> identification after representing that [Lasky] was a
> police officer, were factors leading to [Lasky's]
> conclusion that [p]laintiff was intoxicated and was a
> disorderly person.

(Def. Br., at 17-18.)   However, these facts are disputed, as

plaintiff denies that (1) he was intoxicated, (2) Lasky

17

identified himself as a police officer, and (3) Lasky asked
plaintiff for his identification.  (Pl. Br., at 4, 17-19.)  Thus,
these genuine issues of material fact preclude summary judgment
as to this issue.[7]

Lasky also argues that there was probable cause to arrest
plaintiff for "a number of criminal offenses", including
obstruction of the administration of the law and hindering
apprehension or prosecution, because of plaintiff's "failure to
comply with the directions of a police officer".  (Def. Br., at
19.)  See N.J.S.A. §§ 2C:29-1, -3.  However, both of these
statutes require the individual to have acted purposefully in
committing the offense in order to be liable.  See N.J.S.A. §§
2C:29-1, -3.[8]  Plaintiff argues that he did not know that Lasky

---

[7] Lasky concedes that there is a genuine issue of material
fact as to whether there was probable cause to arrest plaintiff
for assaulting Lasky, as plaintiff denies that he touched Lasky.
(Def. Br., at 14; Pl. Br., at 9.)

[8] An individual violates N.J.S.A § 2C:29-1 when that
individual "purposely obstructs, impairs or perverts the
administration of law or other governmental function or prevents
or attempts to prevent a public servant from lawfully performing
an official function by means of flight, intimidation, force,
violence, or physical interference or obstacle, or by means of
any independently unlawful act."  N.J.S.A § 2C:29-1.  An
individual violates N.J.S.A. § 2C:29-3 when, inter alia, that
individual
    [W]ith [the] purpose to hinder his [or her] own
    detention, apprehension, investigation, prosecution,
    conviction or punishment . . . [that individual]:
    (1) Suppresses, by way of concealment or destruction,
    any evidence of the crime or tampers with a document or
    other source of information, regardless of its

18

was a police officer, as Lasky did not identify himself as such.
(Pl. Br., at 17-18.)  Thus, as there is a genuine issue of
material fact as to whether plaintiff acted purposefully as
required by those statutes, summary judgment as to whether Lasky
had probable cause to arrest plaintiff for those offenses is
inappropriate.

Lasky further argues that "[p]laintiff's conduct provided
probable cause for his arrest for violation of Borough of Spring
Lake Heights Ordinance 3-16".  (Def. Br., at 19-20.)  That
ordinance provides that "[n]o person shall revel, quarrel, brawl,
or otherwise misbehave in a disorderly manner to the disturbance
or annoyance of the peaceful inhabitants of the Borough or be
guilty of any other disorderly conduct in or on a highway or
other public place."  (Dkt. entry no. 30, Certification of William

_____

    admissibility in evidence, which might aid in his
    discovery or apprehension or in the lodging of a charge
    against him; or
    (2) Prevents or obstructs by means of force or
    intimidation anyone from performing an act which might
    aid in his discovery or apprehension or in the lodging
    of a charge against him; or

    (3) Prevents or obstructs by means of force,
    intimidation or deception any witness or informant from
    providing testimony or information, regardless of its
    admissibility, which might aid in his discovery or
    apprehension or in the lodging of a charge against him; or

    (4) Gives false information to a law enforcement officer
    . . .
N.J.S.A § 2C:29-3(b).

19

T. Connell ("Connell Cert."), Ex. C, Borough of Spring Lake Heights Ordinance 3-16.)  Summary judgment as to whether Lasky had probable cause to arrest plaintiff for violating this ordinance is inappropriate here as well, as plaintiff's conduct leading up to his arrest is a disputed issue of fact, as discussed supra.

### 3.   Qualified Immunity

Lasky is entitled to qualified immunity as to the false arrest and false imprisonment claims, regardless of whether his conduct violated plaintiff's constitutional rights, if "a reasonable officer could have believed that [his] conduct was lawful, in light of the clearly established law and information in [his] possession." Berg v. County of Allegheny, 219 F.3d 261, 272 (3d Cir. 2000) (quotation and citations omitted); see Siegel v. Miller, 446 F.Supp.2d 346, 352 (E.D. Pa. 2006) (stating same in the context of a false arrest claim).  It is Lasky's burden to establish that he is entitled to qualified immunity; that is, he must show that his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  See Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001).

Qualified immunity is evaluated under a two-step objective reasonableness test.  Barton v. Curtis, 497 F.3d 331, 335 (3d Cir. 2007).  The Court must first consider whether the facts alleged, taken in the light most favorable to the plaintiff, show

20

that the officer's conduct violated a constitutional right.  Id.;
Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007).  "This is not a
question of immunity at all, but is instead the underlying
question of whether there is even a wrong to be addressed in an
analysis of immunity."  Curley, 499 F.3d at 207.

If a violation could be made out on a favorable view of the
parties' submissions, the Court must then determine whether the
right was clearly established, or "in other words, whether it
would be clear to a reasonable officer that his conduct was
unlawful in the situation [the officer] confronted."  Id.
(quotation and citation omitted).  The second step "addresses
whether, if there was a wrong . . . the officer made a reasonable
mistake about the legal constraints on his [or her] actions and
should therefore be protected against suit".  Id.  Thus, a
defendant may be shielded from liability if the conduct did not
violate clearly established statutory or constitutional rights of
which a reasonable person would have known.  Carswell v. Bor. of
Homestead, 381 F.3d 235, 242 (3d Cir. 2004).

The second step of the immunity analysis is a question of
law for the Court to decide.  Curley, 499 F.3d at 211.  However,
if there are historical facts material to the determination of
reasonableness in dispute, then those issues of fact may be
decided by a jury.  Barton, 497 F.3d at 335; Sharrar v. Felsing,
128 F.3d 810, 828 (3d Cir. 1997).  The Court may use special
interrogatories to allow juries to perform this "advisory"

function.  <u>Curley</u>, 499 F.3d at 211 n.12; <u>Carswell</u>, 381 F.3d at
242.  Once the historical facts are no longer in dispute,
however, the Court must make the ultimate determination on the
availability of qualified immunity as a matter of law.  <u>Carswell</u>,
381 F.3d at 242.

The first step of the qualified immunity analysis is
satisfied here.  After resolving all factual disputes in favor of
plaintiff, the facts alleged, if proven, show that Lasky arrested
plaintiff without probable cause, thus violating plaintiff's
Fourth Amendment rights.  <u>See</u> <u>Barton</u>, 497 F.3d at 335; <u>Kopec v.</u>
<u>Tate</u>, 361 F.3d 772, 777 (3d Cir. 2004) (holding that first step
of qualified immunity analysis satisfied, as plaintiff put forth
facts sufficient, if proven, to establish Fourth Amendment
excessive force violation).

The Court therefore will address the second step of the
immunity analysis.  The requirement of probable cause before a
police officer may arrest an individual is clearly established.
<u>Russoli v. Salisbury Twp.</u>, 126 F.Supp.2d 821, 842 (E.D. Pa.
2000).  However, "even law enforcement officials who reasonably
but mistakenly conclude that probable cause is present are
entitled to immunity."  <u>Id.</u> (quotations and citations omitted).
As discussed <u>supra</u>, there are disputed issues of fact as to both
plaintiff's and Lasky's conduct during the incident at issue.
The Court therefore cannot decide whether a reasonable police

22

officer would understand that Lasky's conduct would violate plaintiff's Fourth Amendment rights without establishing the historical facts as to what the factual circumstances were surrounding plaintiff's arrest.  See Curley, 499 F.3d at 211 n.12.  As a result, Lasky is not entitled to summary judgment as to the qualified immunity issue at this juncture.  Rather, the historical facts surrounding plaintiff's arrest must be established before the Court can determine, as a matter of law, whether Lasky's conduct was objectively reasonable.  See id.

### CONCLUSION

For the reasons stated supra, the Court will grant in part and deny in part Lasky's motion for summary judgment.  The Court will issue an appropriate order and judgment.[9]


        s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:**    June 23, 2008

_____

[9] Borough of Spring Lake Heights, Spring Lake Heights Police Department, Steets, and Petriken also separately move for summary judgment in their favor.  (Dkt. entry no. 32.)  The Court will deny this motion as moot because, as discussed supra, plaintiff and Borough of Spring Lake Heights, Spring Lake Heights Police Department, Steets, and Petriken entered into a stipulation of dismissal in March 2008, pursuant to which plaintiff voluntarily dismissed all claims against these defendants with prejudice. (Dkt. entry no. 38.)